UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


J&J SPORTS PRODUCTIONS, INC.                CIVIL ACTION

v.                                          NO. 18-4407

OUT IN THE COLD, INC. D.B.A.
PETE'S OUT IN THE COLD                      SECTION "F"


ORDER AND REASONS

Before the Court is the plaintiff's motion for summary judgment. For the reasons that follow, the motion is GRANTED.

**Background**

This lawsuit arises out of the interception and broadcast of a pay-per-view boxing fight at a neighborhood bar in New Orleans, Louisiana.

J&J Sports Productions, Inc. is a closed-circuit distributor of sports and entertainment programming. In that capacity, J&J purchased and retained the exclusive commercial exhibition rights to *The Fight of the Century* (*Manny Pacquiao vs. Floyd Mayweather, Jr.*), which was broadcast on May 2, 2015. J&J also marketed and granted broadcast rights in the program to a variety of commercial establishments, in exchange for the payment of a sublicense fee.

Out in the Cold, Inc., doing business as Pete's Out in the Cold, is a Louisiana corporation owned and operated by Kevin Lee and Gary Herty. Pete's Out in the Cold, in turn, operates a bar

1

located at 701 6th Street, New Orleans, Louisiana 70115. On May 2, 2015, a private investigator working for J&J visited Pete's at approximately 9:45 p.m. The investigator observed that one of three televisions in the establishment was turned on and tuned into the fight. He observed a scene with "Leo Santa Cruz in blue trunks and Jose Cayetano in black and red trunks at 1:08 remaining in the 9th round." The investigator also conducted three separate headcounts which demonstrated the presence of about 18 patrons in the bar.[1] It is undisputed that Pete's was not granted a license to receive the television signal for the program.[2]

On April 28, 2018, J&J sued Pete's Out in the Cold, Kevin Lee, and Gary Herty, alleging that the defendants unlawfully broadcast the Pacquiao-Mayweather fight without obtaining J&J's permission or paying J&J the requisite sublicense fee. Because J&J was unable to serve the company's owners, defendants Lee and Herty were dismissed without prejudice on September 12, 2018. J&J

---

[1] As to the capacity of Pete's, the investigator attests:
    The capacity of this establishment is approximately 30 people. At the time of my appearance, I counted the number of patrons three (3) separate times. The head counts were 17, 17, 21.

[2] According to the affidavit of Joseph Gagliardi, the President of J&J Sports Productions, Inc., the "sublicense fee for the *Program* was based on the capacity of the establishment and varies for each event. For this Program, a commercial establishment with a maximum fire code occupancy capacity of 100 persons, [sic] the sublicense fee would have been $3,000.00." Because Pete's has a capacity of no more than 100 patrons, it would have cost Pete's $3,000 to obtain a license to broadcast the Program.

now moves for summary judgment on the issues of liability and damages.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard, the non-moving party must do more than simply deny the allegations raised by the moving party. See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992). Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims. Id. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence. Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2).

"[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007) (internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate. Anderson, 477 U.S. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). Although the Court must "resolve factual controversies in favor of the nonmoving party," it must do so "only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Antoine v. First Student, Inc., 713 F.3d 824, 830 (5th Cir. 2013) (internal quotation marks and citation omitted).

## II.

J&J moves for summary judgment against Pete's, arguing that the defendant's conduct is governed by 47 U.S.C. §§ 553 *and* 605

because Pete's received the television transmission at issue by way of cable *and* satellite signal.[3]

### A.

Section 553(a)(1) provides a private right of action for the unauthorized interception or reception of "any communications service offered over a cable system." 47 U.S.C. § 553(a)(1). Similarly, § 605 prohibits the unauthorized receipt of radio or satellite communications. 47 U.S.C. § 605. To prevail under either § 553 or § 605, the plaintiff "need only show (1) that the Event was shown in Defendants' Establishment, (2) that the Event was shown without authorization by Plaintiff, and (3) that Plaintiff was the exclusive licensee." G&G Closed Circuit Events LLC v. Rivals Sports Grill LLC, 2014 U.S. Dist. LEXIS 5416, at *9 (W.D. La. Jan. 14, 2014) (quoting J&J Sports Prods., Inc. v. El 33, LLC, 2013 U.S. Dist. LEXIS 8006, at *3 (W.D. Tex. 2013)).

### B.

As a threshold matter, the defendant first contends that summary judgment is premature because discovery is not yet complete. Although Pete's notes that it has propounded discovery to the plaintiff, which is due on February 17, 2019, the defendant

---

[3] Although Pete's has not conceded that it received the television program at issue by way of both cable and satellite signal, in responding to interrogatories on August 31, 2018, Pete's stated that, on the night of the program, the business premises received a "combination of satellite television and cable television."

5

fails to point out just how such discovery would create a genuine issue of material fact, or what it is even about. Because the defendant fails to satisfy the requirements of Federal Rule of Civil Procedure 56(d)[4], the Court turns to the merits of J&J's motion.

As to liability, the Court finds that J&J has produced evidence to establish that it had exclusive distribution rights to the program. Specifically, the plaintiff has introduced a copy of the Closed-Circuit Television License Agreement, by which it was granted the exclusive license to exhibit the May 2, 2015 fight. And through the affidavit of its President, Joseph Gagliardi, J&J has established that Pete's never lawfully licensed the program for distribution purposes. Moreover, Pete's does not dispute that

---

[4] Federal Rule of Civil Procedure 56(d) permits a district court to defer considering a pending motion for summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Rule 56(d) motions "are broadly favored and should be liberally granted" because they "safeguard non-moving parties from summary judgment motions that they cannot adequately oppose." Culwell v. City of Fort Worth, 468 F.3d 868, 872 (5th Cir. 2006).
    Nonetheless, the party seeking a continuance "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified, facts." Raby v. Livingston, 600 F.3d 552, 561 (5th Cir. 2010) (quoting Sec. & Exch. Comm'n v. Spence & Green Chem. Co., 612 F.2d 896, 901 (5th Cir. 1980)). Instead, the party must indicate (1) "why he needs additional discovery" and (2) "how the additional discovery will create a genuine issue of material fact." Krim v. BancTexas Grp., Inc., 989 F.2d 1435, 1442 (5th Cir. 1993).

it failed to obtain authorization to receive the television signal or that J&J is the exclusive licensee of the program.

However, the defendant submits that J&J has failed to demonstrate that the program "was actually shown" at Pete's on the night of May 2, 2015.  To substantiate its allegation that the program was actually broadcast at Pete's, J&J points to the affidavit of Mike W. Aertker, a private investigator.  Aertker attests that he arrived at Pete's on May 2, 2015 at approximately 9:45 p.m. and entered without paying a cover charge.  During his twenty-minute visit, he ordered two drinks from the bar and observed one of three televisions turned on and "showing [the] fight."  Aerter also describes a particular scene that he observed while inside the bar: "Leo Santa Cruz in blue trunks and Jose Cayetano in black and red trunks at 1:08 remaining in the 9th round. There was just a shot of Andre Agassi in the audience watching the fight."

In its opposition papers, Pete's contends that the private investigator's affidavit is not sufficient to demonstrate that the program was actually broadcast on the business premises.  Pete's further submits that a video taken by the investigator "does not conclusively show that Defendant in fact broadcast the Program, which would be a material fact for trial."  The Court is not persuaded by the defendant's attempt to manufacture a factual dispute.  Pete's has introduced no evidence to challenge the

investigator's presence at the bar during the fight, or to establish that Santa Cruz and Jose Cayetano were not, in fact, featured in the program. Accordingly, on this record, there is no genuine factual dispute as to whether Pete's unlawfully intercepted and broadcast the program, and liability has been established under 47 U.S.C. §§ 553 or 605. <u>J&J Sports Prods., Inc. v. Mandell Family Ventures, L.L.C.</u>, 751 F.3d 346, 351 (5th Cir. 2014) (holding that Section 553 prohibits only the unauthorized interception of cable communications, whereas Section 605 prohibits the unauthorized receipt of radio or satellite communications). The issue of amount of damages, costs, and attorney's fees is hereby referred to the magistrate judge for a report and recommendation.

Accordingly, for the foregoing reasons, IT IS ORDERED: that the plaintiff's motion for summary judgment is hereby GRANTED as to defendant's liability. IT IS FURTHER ORDERED: that the issue of damages, costs, and attorney's fees is hereby referred to the magistrate judge for a report and recommendation.

New Orleans, Louisiana, February 19, 2019

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE